Weygandt, C. J.
 

 At the November, 1945, election the electors of the relator school district authorized the issuance of bonds in the sum of $200,000 for the construction of a new school building in the townslup to replace eight one-room buildings that had been condemned by the Department of Industrial Relations, Division of Factory and Building Inspection. The work was started but could not be completed because of the insufficiency of funds due to the increase in the cost of building.
 

 It was found that an additional sum of $40,000 was needed. On February 7, 1949, the relator board, acting under the provisions of Section 2293-15«, G-eneral Code (118 Ohio Laws, 707), adopted a resolution declaring an emergency and providing for the submission of a further bond issue in that sum at the May, 1949, primary election. This was done, and the electors approved the proposed issuance of the additional emergency bonds.
 

 Plowever, the respondent clerk has refused to print and sign these bonds on the ground that the question of their issuance could not be submitted legally at a primary election but would have to be voted on at a general election in November. He contends that the total indebtedness of the school district would not exceed six per- cent of the total value of all property in the district as listed and assessed for taxation and
 
 *455
 
 that this fact precluded the submission of such a bond issue at other than a general election in November, as provided by Section 2293-22, General Code.
 

 This controversy arises by reason of the ambiguous language of Section 2293-15a, General Code (118 Ohio Laws, 707), which in part then read as follows:
 

 “In school districts where school buildings have been destroyed or condemned by duly constituted public authority, or where such buildings are partially constructed or so constructed or planned as to require additions thereto before being completed, and where existing limitations make adequate replacement, additions or improvements impossible as determined by the local board of education, such board may declare an emergency. Upon the declaration of an emergency, the local board of education, in accordance with law, shall place before the electors of the. district the question of issuing bonds for the replacement or improvement of, or the addition'to school buildings. The form of the ballot shall describe the emergency existing, the authority under which it is declared, and shall state that the bond issue for emergency purposes is beyond the limitations heretofore prescribed by law and that electors are to express their wishes yes or no. If 65 per centum of the electors voting on the question of such bonds vote in favor thereof, the taxing authority of the school district shall have authority to issue such bonds in accordance with the provisions of this section, the Uniform Bond Act of Ohio and the General Code and the debt service levies for such bonds shall be outside of all limitations on the tax rate.
 

 “The provisions of Section 2293-22 of the General Code, requiring the question of the issue of bonds to be submitted to popular vote only at a November election shall be waived and such question may be sub
 
 *456
 
 mitted with the consent of the Department of Taxation of Ohio to the popular vote at a primary election or at a special election called for that purpose.”
 

 Under these provisions was it necessary that the total indebtedness of the school district exceed six per cent of the total value of all property in the district as listed and assessed for taxation in order that there could be a submission of such an emergency bond issue at a primary election?
 

 The respondent relies on the first quoted sentence which provides that an emergency may be declared (1) where school buildings have been destroyed or (2) where they have been condemned or (3) where such buildings are partially constructed or so constructed or planned as to require additions thereto before being completed,
 
 “and
 
 where existing limitations make adequate replacement, additions or improvements impossible as determined by the local board of education.” (Italics supplied.) He insists that the preceding use of the disjunctive “or” and the final use of the conjunctive “and” make it necessary that the last condition be present in every instance. In other words, it is his contention that an emergency could not be declared unless ! ‘ existing limitations make adequate * * * improvements impossible.”
 

 But what is meant by “existing limitations”? The respondent contends that this language relates to the six per cent limitation mentioned in the preceding Section 2293-15 (118 Ohio Laws, 706). This the relator disputes.
 

 And what is the import of the language “as determined by the local board of education” in the provision “where existing limitations make adequate * * * improvements impossible as determined by the local board of education”? Does this mean that the board of education is given discretion to determine
 
 *457
 
 whether existing limitations of their funds make improvements impossible?
 

 This court is of the view that as these provisions then read, they should not be construed as an implied limitation on the authority of the local board of education to declare an emergency and submit a proposed bond issue to the voters at a primary election. A contrary interpretation would seem to defeat the very purpose of the statute and would mean that if an emergency had arisen soon after a November election and the total indebtedness were under six per cent, a local board of education would have been powerless to submit a proposed bond issue to the voters for nearly a year- — hardly a reasonable and effective procedure for meeting an emergency.
 

 It may be observed that Section 2293-15 (118 Ohio Laws, 706) contains another limitation that “the net indebtedness created or incurred by any school district without a vote of the people shall never exceed one-tenth of one per cent of the total value of all property in such school district as listed and assessed fof taxation.” This court is of the view that this latter limitation is one which makes
 
 ‘ ‘
 
 adequate replacement, additions or improvements impossible” within the meaning of Section 2293-15o (118 Ohio Laws, 707).
 

 The respondent’s demurrer to the relator’s petition is overruled and a writ of mandamus is allowed in conformity with the prayer.
 

 Writ allowed.
 

 Matthias, Hart, Zimmerman, Stewart, Turner and Taet, JJ., concur.